1

2

3

4

5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7

JIN ZHU,

8                                          Plaintiff,

9          v.

10

BRIDGEPORT SCHOOL DISTRICT
NO. 75,

11

12                                        Defendant.

NO:  2:15-CV-0263-TOR

ORDER RE: DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

13        BEFORE THE COURT is Defendant's Motion for Summary Judgment

14    under Rule 56 and/or Motion to Dismiss Under Rule 12(b)(6) and Defendant's

15    Memo in Support of Motion (ECF No. 23).  This motion was heard with oral

16    argument on December 7, 2016.  Matthew Z. Crotty and Michael B. Love appeared

17    on behalf of Plaintiff Jin Zhu.  Jerry J. Moberg and James E. Baker appeared on

18    behalf of Defendant Bridgeport School District No. 75.  The Court has reviewed

19    the briefing and the complete file, heard from counsel, and is fully informed.

20    //

ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

**BACKGROUND**

Plaintiff Jin Zhu filed this action against Defendant Bridgeport School District No. 75 on February 25, 2016, asserting discrimination and retaliation claims under 42 U.S.C. § 1981 and the Washington Law Against Discrimination for Defendant's refusal to hire Plaintiff.  *See* ECF No. 13.  Plaintiff also asserted that Defendant violated RCW 49.44.010 for blacklisting him and the Washington Public Records Act, RCW 42.56.520, for failing to provide complete records upon request.  *Id.*

Defendant moves to dismiss Plaintiff's 42 U.S.C. § 1981 claims or, in the alternative, for summary judgment on those claims and Plaintiff's remaining state law claims.  *See* ECF No. 23.  Plaintiff opposes dismissal and summary judgment, and has withdrawn his disparate impact and blacklisting claims.  *See* ECF No. 32 at 7.

For the foregoing reasons, the Court finds Defendant is entitled to summary judgment on Plaintiff's 42 U.S.C. § 1981 claims.  The Court declines to further exercise its supplemental jurisdiction over Plaintiff's remaining state law claims; however, Plaintiff is free to pursue those claims in a state court proceeding.

*//*

*//*

*//*

**FACTS**

The following facts are gleaned from the parties' submissions and are principally undisputed, but where there is a dispute the Court recites the evidence through a lens favorable to Plaintiff. As this matter has not proceeded to trial, these are not findings of fact carrying consequences collateral to this decision.

### *Employment with Waterville School District*

Plaintiff Jin Zhu is a Chinese-American citizen who worked as a secondary math teacher for Waterville School District ("Waterville") from 2006 to 2012. ECF Nos. 32-1 at ¶¶ 3-4; 32-6 at ¶¶ 2-3. For various reasons, Waterville placed Plaintiff on administrative leave and, on September 2, 2010, attempted to discharge him. ECF Nos. 32-1 at ¶ 6; 32-6 at ¶ 6. On September 28, 2010, Plaintiff filed a lawsuit against Waterville and its superintendent for racial discrimination and retaliation. ECF Nos. 32-1 at ¶ 8; 32-6 at ¶ 7; *see also Zhu v. Waterville School District No. 209, et al.*, 2:10-CV-0333-LRS, ECF No. 1 (E.D. Wash.).

In April and May of 2011, Plaintiff was afforded a statutory due process hearing pursuant to RCW 28A.405.310, where it was determined that Plaintiff should be restored to his teaching position. ECF Nos. 32-1 at ¶ 9; 32-6 at ¶ 8. On March 13, 2012, Plaintiff and Waterville monetarily settled the dispute with a condition that Plaintiff resign. ECF Nos. 32-1 at ¶ 14; 32-6 at ¶ 12.

//

***Application for employment with North Central Educational Service District No. 171***

North Central Educational Service District No. 171 ("District No. 171") provides administrative support services, including risk management and confidential human resources support, to various school districts including Waterville and Defendant.  ECF Nos. 32-1 at ¶¶ 1-2; 32-2 at 14-19, 22-24, 28-29.

On May 30, 2012, Plaintiff applied for a Math-Science Specialist position with District No. 171.  ECF Nos. 32-1 at ¶ 24; 32-6 at ¶ 20.  Although Plaintiff received an interview, he was not selected for the position.  *Id.*  Thereafter, on July 20, 2015, Plaintiff filed a lawsuit against District No. 171 alleging discrimination, retaliation, and blacklisting.  *See Zhu v. North Central Educational Service District # 171*, 2:15-CV-0183-JLQ, ECF No. 1 (E.D. Wash.).  On September 16, 2016, a jury found that District No. 171 retaliated against Plaintiff on the sole ground that he previously filed a race discrimination claim against Waterville.[1]  *See id.* at 114 (Case No. 2:15-CV-0183-JLQ); *see also* ECF Nos. 32-1 at ¶ 25; 32-3 at 95-97.

//

//

---

[1]     District No. 171 has challenged the jury's verdict.  *See* ECF No. 136 (Case No. 2:15-CV-0183-JLQ).

*Applications for employment with Bridgeport School District*

In the instant action, Plaintiff avers that he applied for three open teaching positions with Defendant for which he was qualified, but was not interviewed nor hired because of race discrimination, and was retaliated against because he previously sued Waterville for civil rights violations, and because he later filed a charge of racial discrimination with the Equal Employment Opportunity Commission against Defendant. *See* ECF Nos. 13 at ¶¶ 69, 84, 98; 24 at ¶ 2; 32-1 at ¶¶ 49-52, 73-74, 85-86, 106. Defendant contends that Plaintiff's race, national origin, lawsuit against Waterville, and later EEOC filing had nothing to do with Plaintiff not being selected for an interview or being hired. *See* ECF Nos. 14 at ¶¶ 84, 98; 24 at ¶ 15; 24-1 at ¶ 15. Rather, Defendant avers that Plaintiff was not granted an interview because he failed to include contact information or a reference letter from any of his supervisors and other qualified persons were hired. ECF Nos. 24 ¶¶ 6, 7; 24-2; 32-1 at ¶ 110.

### a. August 1, 2012 position

Defendant posted a Middle School Math Intervention Teacher position on August 1, 2012. ECF Nos. 32-1 at ¶ 29; 32-6 at ¶ 21. The Notice of Opening did not require a letter of recommendation or reference. ECF Nos. 32-1 at ¶ 30; 32-3 at 114-115, 196. Plaintiff applied for the position on August 8, 2012. ECF Nos. 32-1 at ¶ 31; 32-3 at 229; 32-6 at ¶ 21. Plaintiff's application included a signed

letter of interest, a completed and signed application, a resume, two

recommendation letters, and supplemental information transmitted to Defendant's

superintendent, Scott Sattler ("Sattler"), highlighting Plaintiff's achievements.

ECF Nos. 32-1 at ¶ 43; 32-6 at ¶ 22.

On August 10, 2012, Edith Sattler, Sattler's mother, applied for the position

and submitted an unsigned letter without letters of reference.  ECF Nos. 32-1 at

¶¶ 41-42, 146; 32-3 at 119, 197.  Plaintiff and Edith Sattler were the only two

applicants considered for the August 1, 2012 position.  ECF No. 32-1 ¶ 52; 32-6 at

¶ 25.  Despite that Edith Sattler had never taught a math class, only took a single

elementary math class in 1968, and spent the previous 2011-2012 school year

traveling in a recreational vehicle, she was offered the August 1, 2012 math

position; Plaintiff was not granted an interview.  ECF Nos. 32-1 at ¶¶ 49-51; 32-3

at 120-121, 129, 230.

### b.  March 18, 2013 position

On March 18, 2013, Defendant opened a Middle School Math Intervention

Teacher position because Edith Sattler decided to step down from her position.

ECF Nos. 32-1 at ¶¶ 59-60; 32-3 at 132.  Again, the Notice of Opening did not

require a recommendation letter.  ECF Nos. 32-1 at ¶ 59; 32-3 at 199; 32-6 at ¶ 26.

ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

Only Plaintiff and Frank Lynn Moore II applied for the position.[2]  ECF Nos. 32-1 at ¶ 61; 32-3 at 230.

Plaintiff applied for the March 18, 2013 position on March 28, 2013, and submitted an updated resume, new letter of interest, and supplemental information. ECF Nos. 32-1 at ¶ 62; 32-6 at ¶ 28.  On March 28, 2013, Plaintiff contacted Sattler to find out whether he submitted all the required materials for the application and asked if more information is needed for the sake of a complete and objective assessment.  ECF No. 32-6 at ¶ 29.  Plaintiff was never informed that he needed to submit a recommendation or reference letter from a certificated administrator or supervisor.  *Id.*

More than four months later, on August 2, 2013, Mr. Moore applied for the March 18, 2013, posted position; Defendant hired Mr. Moore on August 22, 2013. ECF Nos. 32-1 at ¶¶ 64-65; 32-3 at 132, 139-140, 147.  Mr. Moore did not submit a letter of recommendation with his application.  ECF No. 32-1 at ¶ 147; *compare* ECF No. 24-1 at ¶16, *with* 24-6 at 107-111.  Despite that Plaintiff "had more experience and qualifications" than Mr. Moore, Defendant did not interview

---

[2]      The parties dispute whether Alex Martin was hired for the March 18, 2013, position.  *See* ECF Nos. 32-1 at ¶¶ 94-95; 24-7 at 115.

ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

Plaintiff and hired Mr. Moore instead.  ECF Nos. 32-1 at ¶¶ 73-74; 32-3 at 137; 32-6 at ¶ 30.

### c.  March 27, 2013 position

On March 27, 2013, Defendant opened a Middle School Science Teacher position and, again, the Notice of Opening did not require a recommendation or reference letter.  ECF Nos. 32-1 at ¶ 76; 32-3 at 200; 32-6 at ¶ 31.  Plaintiff and Kara Jo Smith applied for the position.  ECF Nos. 32-1 at ¶ 77; 32-3 at 230-231.  Plaintiff's application stated that "sixteen of the eighteen students in [his] Advanced Placement Physics class passed the College Board's test in 2006."  ECF Nos. 32-1 at ¶ 79; 32-6 at ¶ 35.  Despite that Plaintiff "had more experience and qualifications" than Ms. Smith, Defendant did not interview Plaintiff and hired Ms. Smith instead on June 27, 2013.  ECF Nos. 32-1 at ¶¶ 80, 85-86; 32-2 at 137, 148; 32-6 at ¶ 38.

### *Plaintiff's Public Record Request*

On January 17, 2014, Plaintiff submitted a public records request to Sattler requesting "a copy of Bridgeport School District's program(s) that aimed to increase the employment of minority teachers in the Bridgeport School District and became effective prior to May 9, 2013."  ECF Nos. 32-1 at ¶ 155; 32-3 at 193-94.  In response, on January 22, 2014, Sattler provided "Policy No. 5010 Personnel Nondiscrimination and Affirmative Action" and "Bridgeport School District No.

ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

75 2011 – 2016 Affirmative Action Plan." ECF Nos. 32-1 at ¶¶ 157-58; 32-3 at 177-91.

Sattler acknowledges that "Bridgeport School District Procedure 5010P Nondiscrimination and Affirmative Action" is responsive to Plaintiff's request, but was inadvertently not provided. *See* ECF No. 32-1 at ¶ 159; 24-1 at ¶ 13.

## DISCUSSION

### A. Sufficiency of Allegations in Plaintiff's Amended Complaint

Defendant moves for dismissal of Plaintiff's 42 U.S.C. § 1981 claims pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 23. However, a motion to dismiss for failure to state a claim, which tests the legal sufficiency of a plaintiff's claim, *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001), "must be made *before* pleading if a responsive pleading is allowed," Fed. R. Civ. P. 12(b) (emphasis added). Here, Defendant's motion was filed after Defendant filed its answer. *See* ECF Nos. 23; 33. Under Rule 12(h)(2), the defense of failure to state a claim upon which relief can be granted may be raised by moving for judgment on the pleadings under Rule 12(c) "[a]fter the pleadings are closed[,] but early enough not to delay trial." Therefore, Defendant's motion is properly viewed as a Rule 12(c) motion for judgment on the pleadings, which is "functionally identical" to the standard applicable to a Rule 12(b) motion. *See, e.g.*, *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011)

ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

(equating the standard for deciding a Rule 12(c) motion as the same as a Rule 12(b)(6) motion); *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (noting that "the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog").

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal for failure to state a claim, a plaintiff must allege "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing whether Rule 8(a)(2) has been satisfied, a court must first identify the elements of a plaintiff's claim and then determine whether those elements could be proven on the facts pled. *See Iqbal,* 556 U.S. at 675.

In this evaluation, the court should draw all reasonable inferences in the plaintiff's favor, *see Sheppard v. David Evans & Assocs.,* 694 F.3d 1045, 1051 (9th Cir. 2012), but it need not accept "naked assertions devoid of further factual enhancement." *Iqbal,* 556 U.S. at 678 (internal quotations and citation omitted). Dismissal is appropriate where the plaintiff fails to state a claim supported by a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990) (citation omitted), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

//

ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

To prevail on a claim under 42 U.S.C. § 1983 against a local government entity, a plaintiff must prove that the entity violated his or her constitutional rights by engaging in an "action pursuant to official municipal policy of some nature." *Monell v. Dep't. Soc. Servs.*, 436 U.S. 658, 691-94 (1978) (concluding that § 1983 does not permit *respondeat superior* liability against municipalities). The Ninth Circuit applies the reasoning articulated in *Monell* to municipality liability arising under 42 U.S.C. § 1981. *See Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1215-16 (9th Cir. 1996) (adopting the "policy or custom" requirement in § 1981 actions and precluding *respondeat superior* liability).

To establish the existence of an "official municipal policy," a plaintiff may articulate any of the following four theories: (1) action pursuant to an express policy or longstanding practice or custom; (2) action by a final policymaker acting in his or her official policymaking capacity; (3) ratification of an employee's action by a final policymaker; and (4) failure to adequately train employees with deliberate indifference to the consequences. *Christie v. Iopa*, 176 F.3d 1231, 1235-40 (9th Cir. 1999).

Defendant argues that Plaintiff has failed to state a claim because he has not sufficiently alleged that Defendant had a formal policy or longstanding custom of discriminating or retaliating against job applicants. *See* ECF No. 23 at 8.

ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

Plaintiff's amended complaint includes two paragraphs relevant to whether

Plaintiff has sufficiently pled a claim for municipal liability:

> . . . Mr. Zhu was harmed by Bridgeport's policy and customs, and violation of the law by, inter alia, claiming to advance affirmative action policies but not following them, not hiring job applicants (like Mr. Zhu) who previously sued their former employers for civil rights violations, and not hiring qualified minority teachers (like Mr. Zhu) and instead hiring less qualified teachers of a Caucasian race.

> . . . deviation from policy gives rise to an inference of discrimination. Here Bridgeport holds itself out as an entity with policies geared toward hiring minority teachers but deviated from that policy vis-à-vis Mr. Zhu.

ECF No. 13 at ¶¶ 84, 88.[3]

Taken together, these paragraphs include slightly more than a "mere formulaic recitation" of an action pursuant to an express policy or longstanding practice or custom. *See Monell*, 436 U.S. at 694; *Christie*, 176 F.3d at 1235. The allegations contain some factual enhancement identifying specific facts and a corollary legal theory. *See Iqbal*, 556 U.S. at 678. However, noncompliance with

---

[3]    Plaintiff also alleged that Defendant's "policy and/or practice of not considering Mr. Zhu's applications for employment based on the absence of a current educator letter of recommendation constituted disparate impact discrimination on individuals . . . ." *Id.* at ¶ 95. However, Plaintiff has withdrawn his disparate impact claim. *See* ECF No. 32 at 7.

ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

or "deviation from" Defendant's affirmative action policies cannot ground Plaintiff's § 1981 claim because *"it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible[,]"* not a government's *failure* to execute a policy or custom. *Monell*, 436 U.S. at 694 (emphasis added). Without more, these paragraphs are insufficient to state a claim supported by a cognizable legal theory under 42 U.S.C. § 1981. *Balistreri,* 901 F.2d at 699.

Notwithstanding, Plaintiff's amended complaint arguably includes sufficient facts to allow Plaintiff to pursue an alternative municipal policy theory (i.e., official action of a final policymaker). *See* ECF No. 13 at ¶¶ 26, 29, 36, 38, 40-41, 43, 52, 84, 100 (allegations regarding the selection committee's and superintendent's hiring decisions). Accordingly, and as discussed in further detail below, the Court will analyze Plaintiff's 42 U.S.C. § 1981 claims under Fed. R. Civ. P. 56(a). *See Magana v. Com. of the N. Mariana Islands*, 107 F.3d 1436, 1447–48 (9th Cir. 1997) (a district court errs by considering only the pleadings at the summary judgment stage).

**B. Summary Judgment**

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the

initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. For purposes of summary judgment, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2); *see also* L.R. 56.1(d).

A fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that the trier-of-fact could find in favor of the non-moving party. *Id.* "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and alterations omitted); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968) (holding that a party is only entitled to proceed to trial if it presents sufficient, probative evidence supporting the claimed factual dispute, rather than resting on mere allegations). In ruling upon

a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### 1. 42 U.S.C. § 1981

Defendant moves for summary judgment on Plaintiff's discrimination and retaliation claims brought under 42 U.S.C. § 1981. Defendant argues that Plaintiff cannot prove that an official policy or custom caused Plaintiff's injuries, and Plaintiff's retaliation and disparate treatment claims are meritless. Plaintiff argues that Defendant vested its superintendent and screening committee with policy-making authority, and that Defendant's policymakers' refusal to interview and hire Plaintiff violated his constitutional right to contract.

Title 42 U.S.C. § 1981 provides, in pertinent part, that "[a]ll persons ... shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." As stated above, to prevail on a § 1981 claim against a local government entity, a plaintiff must prove that the entity violated his or her constitutional rights by acting pursuant to an official municipal policy. *See Monell*, 436 U.S. at 691-94; *Fed'n of African Am. Contractors*, 96 F.3d at 1215-16. A policy may be established by an express policy or longstanding custom, an action by a final policy maker, an entity's ratification of an employee's actions, or by the failure to train employees with deliberate indifference to the consequences. *Christie*, 176

ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

1  F.3d at 1235-40.   To establish a longstanding practice or custom, "[a] single

2  constitutional deprivation ordinarily is insufficient." *Christie*, 176 F.3d at 1235.

3  However, when a person with "final policymaking authority" is responsible for

4  even an isolated constitutional violation, a single instance may suffice to establish

5  a "policy." *Id.*; *see also Lytle v. Carl*, 382 F.3d 978, 983 (9th Cir. 2004).

6          Courts must decide based on "state and local positive law, as well as

7  'custom or usage' having the force of law," to determine whether a particular

8  official has final policymaking authority. *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S.

9  701, 737 (1989) (internal quotation marks and citation omitted), superseded on

10 other grounds by statute as stated in *Fed'n of African Am. Contractors v. City of*

11 *Oakland*, 96 F.3d at 1205.  A final policymaker "must be in a position of authority

12 such that a final decision by that person may appropriately be attributed to the

13 [governmental agency]." *Lytle*, 382 F.3d at 983.  To that end, courts must

14 determine whether a "policymaker merely has delegated discretion to act, or

15 whether it has done more by delegating final policymaking authority . . . ."

16 *Christie*, 176 F.3d at 1236-37.  In that analysis, courts must determine whether the

17 official's discretionary decision is "constrained by policies not of that official's

18 making" because those policies represent the municipality's actions, not the

19 official's actions deviating therefrom.  *City of St. Louis v. Praprotnik*, 485 U.S.

20 112, 127 (1988) (plurality).

ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

1      Importantly, courts must also ascertain whether the official's discretionary

2  decision is "subject to review by the municipality's authorized policymakers"

3  because that constraint inexorably means that the municipality has retained the

4  authority to adjudge the individual's actions for compliance with its policies,

5  which precludes a finding of final policymaking authority.  *Id.*; *see also Lytle*, 382

6  F.3d at 984–86 (holding that a superintendent and assistant superintendent were

7  final policymakers with respect to employee discipline because their decisions

8  were unreviewable).  In other words, "[i]f the mere exercise of discretion by an

9  employee could give rise to a constitutional violation, the result would be

10  indistinguishable from *respondeat superior* liability."  *Praprotnik*, 485 U.S at 126.

11      Here, Plaintiff shifts from his initial theory that his § 1981 claims are

12  premised on Defendant's failure to follow its affirmative action policy, and instead,

13  argues that Defendant's superintendent, Sattler, and its screening committee (of

14  which Sattler is a member) are policymakers whom effectuated a policy of

15  discrimination and retaliation.  *See* ECF No. 32 at 28-30.  Plaintiff proffers

16  evidence purportedly showing that Defendant vested Sattler and the screening

17  committee with "employment-related policy making authority."  *See* ECF No. 32

18  at 28; 32-3 at 178, 181-82, 212, 223, 225, 245-247.

19      Plaintiff argues that Defendant's personnel policy shows that the screening

20  committee selects a candidate to recommend to the superintendent for hire.  ECF

ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

No. 32 at 28; 32-3 at 223.  Plaintiff argues that Sattler, "acting pursuant to [that] hiring policy delegated by [Defendant's] board, made the decision to not allow Mr. Zhu to interview for the three positions for which he applied" and hired Caucasian persons who did not meet the specified minimum qualifications.  ECF No. 32 at 9, 30.  According to Plaintiff, these facts—combined with other circumstantial evidence and inferences—are sufficient to survive summary judgment.  *Id.* at 30-31.

The Court must first determine whether Defendant's superintendent and its screening committee have final policymaking authority.  *See Jett*, 491 U.S. at 737.  In Washington, a school district can be liable for "its officers only where (1) one of its final policymakers acts (2) in an area within which that policymaker *could have* established local government policy (in the usual sense)."  *Lutheran Day Care v. Snohomish Cty.*, 119 Wash.2d 91, 123–24 (1992).  Washington law squarely designates a school district's board of directors as the body responsible for determining and adopting policies.  *See* RCW 28A.320.015(1)(a) (conferring broad discretionary power); WAC 392-121-188 (stating that "[s]chool districts have general authority to contract for the services of individuals to provide instruction").  A board of directors is armed with "[s]uch powers as are necessarily or fairly implied in the powers expressly authorized by law."  RCW 28A.320.015(1)(c).

1    The Court finds that Defendant merely delegated discretion to act to Sattler

2    and its screening committee, rather than delegating final policymaking authority.

3    First, Defendant has adopted affirmative action policies and personnel hiring

4    policies. *See* ECF No. 32-2 at 220-224, 178-183.  Defendant's Nondiscrimination

5    and Affirmative Action policy (revised on November 28, 2011) and its 2011 –

6    2016 Affirmative Action Plan both show that Defendant's superintendent, Sattler,

7    is tasked with developing an affirmative action plan and ensuring that no personnel

8    procedures will discriminate against any individual.  *Id.* at 178, 181.  Sattler is also

9    responsible for implementing Defendant's "desire and commitment to employ

10    members of minority groups and women[,]" among other duties.  *Id.* at 183.  The

11    affirmative action policy and plan do not evince a delegation of final policymaking

12    authority to Sattler.  Rather, Sattler is delegated the discretion to effectuate a plan

13    in compliance with Defendant's already-established policies.  Moreover,

14    Defendant's affirmative action policies do not cloak Sattler with the authority to

15    deviate from or create new policies contrary to Defendant's affirmative action

16    policies.

17    Second, Defendant's hiring policy, "Policy: 5000P, Section: 5000 –

18    Personnel," describes procedures for the recruitment and selection of staff.  *Id.* at

19    220-224.  A screening committee is tasked with deciding who to interview and

20    select for recommendation to the superintendent.  *Id.* at 223.  Thereafter, the

ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

recommendation is presented to the board of directors at an executive session where the board decides whether to hire the candidate. *Id.* at 224. Defendant's hiring policy does not delegate policymaking authority. The screening committee's and Sattler's actions could not have established local government policy because the board is the final decision maker for all hiring decisions. *See Praprotnik*, 485 U.S. at 126-27; *Lutheran Day Care*, 119 Wash.2d at 120-123. Likewise, Defendant's hiring and affirmative action policies serve to constrain its employees' actions. An employee with delegated discretion to act, like superintendent Sattler, who allegedly deviates from a local government entity's policy, is insufficient to establish municipality liability. *See Praprotnik*, 485 U.S. at 126-27.

Third, despite that Sattler signed employment contracts on Defendant's behalf, the employment contracts are between the board of directors and the selected candidate. *See* ECF No. 32-3 at 131; 213, 264, 301. Sattler's ability to sign new hire contracts does not indicate that Defendant bestowed final policymaking authority to Sattler because only the board of directors had the authority to approve who to hire.

Viewing the evidence in a light most favorable to Plaintiff, there is no question that the School District's board of directors is Defendant's final policymaking body for hiring. There is nothing in the record to suggest that

ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

Defendant conferred final policymaking authority to Sattler or its screening committee. Defendant's policies explicitly forbid unlawful hiring practices and merely task Sattler with enforcement of those policies. Likewise, Sattler and the screening committee could not have established a discriminatory or retaliatory hiring policy because the final hiring decision is constrained by the board's review. *See Praprotnik,* 485 U.S. at 127 ("[W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies.").

In sum, the Court finds that Plaintiff may not avoid summary judgment on the ground that Defendant's final policymakers engaged in actions constituting an "official municipal policy" sufficient to establish municipal liability under 42 U.S.C. § 1981. Thus, the Court cannot reach the merits of Plaintiff's discrimination and retaliation claims because Defendant cannot be liable under 42 U.S.C. § 1981. Accordingly, and without evidence of a policy or custom of retaliation or discrimination, the Court grants summary judgment in favor of Defendant on Plaintiff's § 1981 claims.

**C. Supplemental Jurisdiction**

A federal court has supplemental jurisdiction over pendent state law claims to the extent they are "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C.

ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21

§ 1367(a).  "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together."  *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (citation omitted).  Once the court acquires supplemental jurisdiction over state law claims, § 1367(c) provides that the court may decline to exercise jurisdiction if

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Indeed, "[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), superseded on other grounds by statute as stated in *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010); *see also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc).

Here, the Court declines to retain supplemental jurisdiction for several reasons.  First, the Court has determined that Defendant is entitled to summary judgment on Plaintiff's federal claims over which the Court had original jurisdiction, and this triggers the Court's discretion to decline exercising

ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22

1    supplemental jurisdiction.  28 U.S.C. § 1367(c)(3); *Ove v. Gwinn*, 264 F.3d 817,

2    826 (9th Cir. 2001) (finding that a district court did not abuse its discretion by

3    declining to exercise supplemental jurisdiction over the remaining state law claims

4    when federal claims were dismissed).

5        Second, because this case is still at the summary judgment stage the parties

6    will not be greatly inconvenienced by the Court's decision to decline jurisdiction.

7    *See* ECF No. 10.  If Plaintiff chooses to refile in state court, the parties' completed

8    discovery and briefing can easily be utilized in that forum.  Further, the period of

9    limitation for Plaintiff's remaining state law claims is tolled for thirty days after the

10   claims are dismissed unless Washington law provides for a longer tolling period.

11   *See* 28 U.S.C. § 1367(d).

12       Third, state court is a particularly appropriate forum in which to address

13   Plaintiff's remaining state law claims under the Washington Law Against

14   Discrimination ("WLAD") and the Washington Public Records Act because those

15   claims are governed by state law.  Indeed, state law issues remain in this case like

16   those that will be certified for determination by the Washington Supreme Court in

17   *Zhu v. North Central Educational Service District # 171*, 2:15-CV-0183-JLQ, ECF

18   No. 154 (E.D. Wash.).

19       Against that backdrop, it makes little sense for this Court to decide whether

20   Plaintiff has a viable cause of action for retaliation under the WLAD.  The values

ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 23

of judicial economy, convenience to the parties, fairness, and comity would be no more advanced by retaining the case in this Court than by the parties resolving the state law claims in state court.

For all of these reasons, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3).

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (ECF No. 23) is **GRANTED** in favor of Defendant on Plaintiff's retaliation and discrimination claims brought under 42 U.S.C. § 1981, and **DENIED** as moot as to Plaintiff's remaining state law claims.

2. Plaintiff's state law claims brought under the Washington Law Against Discrimination and the Washington Public Records Act are **DISMISSED** without prejudice.

3. All remaining motions and hearings are **VACATED** as moot.

The District Court Executive is directed to enter this Order, enter Judgment accordingly, provide copies to counsel, and close the file.

**DATED** December 16, 2016.



THOMAS O. RICE
Chief United States District Judge

ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 24